# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CARMELA VENEZIALE, | : | |
| :--- | :--- | :--- |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 11-4879 |
| QUEST DIAGNOSTICS and | : | |
| LEGAL MEDICAL STAFFING | : | |
| SERVICES, INC. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                      August 27, 2013

       Currently pending before the Court is a Motion by Defendant Quest Diagnostics, Inc. ("Quest") for Leave to Amend its New Matter Crossclaim. For the following reasons, the Motion is denied.

## I.     FACTUAL BACKGROUND

       According to the facts set forth in the Amended Complaint, Plaintiff Carmela Veneziale was referred by her primary care physician to Defendant Quest for bloodwork on August 3, 2009. (Am. Compl. ¶ 7.) Without any explanation or warning, the phlebotomist taking the blood stuck a needle into Plaintiff's right hand at the middle knuckle on the dorsal side of her hand. (Id. ¶ 9.) In doing so, the phlebotomist purportedly injured Plaintiff's nerves and nervous system. (Id. ¶ 14.) Although the phlebotomist was the agent or borrowed servant of Defendant Quest, Plaintiff alleges, on information and belief, that the phlebotomist was actually an employee of Defendant Legal Medical Staffing Services ("LMS"). (Id. ¶¶ 10–13.)

       On July 29, 2011, Plaintiff instituted suit against both Quest and LMS and, on November

2, 2011, she filed an Amended Complaint. The suit alleges general negligence, as well as negligent hiring, negligent supervision, and battery against both Defendants. (Id. ¶¶ 15–57.) Both Defendants filed Answers, as well as Crossclaims against one another. On July 26, 2013, following multiple amendments of the scheduling order, the Court approved a stipulated stay of the case for sixty days pending mediation and agreed to again extend all discovery deadlines.

On July 17, 2013, Defendant Quest filed a Motion for Leave to Amend its New Matter Crossclaim. Defendant LMS filed a response on July 31, 2013, Quest submitted a "Supplemental Memorandum" in support of its Motion on July 31, 2013, and LMS filed a Sur-reply Brief on August 9, 2013. The matter is now ripe for judicial review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) sets out the standard for granting leave to amend a pleading when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The Rule clearly states that "[t]he court should freely give leave when justice so requires." Id. Nonetheless, the policy favoring liberal amendments is not "unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. at 182).

2

**III.    DISCUSSION**

Defendant Quest's current Motion argues that, on May 30, 2013, LMS produced to Quest a Fee Agreement Contract ("Contract") between LMS and Quest. Pursuant to this Contract, which was drafted by LMS and executed by Quest in November 2004, the phlebotomist that allegedly injured Plaintiff was a temporary employee provided by LMS to Quest. Part of the Contract provides that all temporary employees placed by LMS are employees of LMS and covered under LMS's liability and workers' compensation policy. (Def. Quest's Mot. to Amend, Ex. C.) Quest now seeks to amend its New Matter Crossclaim to specifically plead the elements of the Fee Agreement Contract and allege that, in the event Quest is deemed liable to Plaintiff, it is entitled to indemnity or contribution from LMS pursuant to that Contract. (Def. Quest's Supplemental Mem. Supp. Mot. Amend, Ex. A.) In response, Defendant LMS contends that the Court should deny the proposed amendment on multiple grounds, including failure to attach the proposed pleading, undue delay, prejudice, lack of jurisdiction, and futility.

Upon review of the parties' briefs, the Court finds that leave to amend is unwarranted and improper for several reasons. First, as a purely procedural matter, where leave of court is required to amend the complaint, the plaintiff must request leave to amend and attach the proposed amended complaint to the request for leave. Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007). Failure to attach the proposed amendment is fatal to the request. Id. at 252–53.

In the present matter, Quest did not attach to its Motion a proposed amended New Matter Crossclaim. Accordingly, when responding to the Motion, LMS had to speculate as to the nature of the amendment in order to formulate its argument. Two weeks after its original Motion—on

3

the same day that LMS identified the deficiency—Quest provided the Court with a Supplemental Memorandum attaching a copy of the proposed New Matter Crossclaim. In this late submission, Quest neither offered an explanation for its initial failure nor acknowledged that its misstep was fatal to its original Motion. Faced with this supplemental submission, LMS was then required to file another brief to respond to the new information. Given the well-settled nature of this procedure rule, the Court cannot simply condone Quest's failure.

Nevertheless, even were the Court to disregard this error, leave to amend still remains improper due to Quest's excessive delay in filing the Motion. In the Third Circuit, delay alone does not justify denying a motion to amend. Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001); see also Collins v. City of Gloucester, No. Civ.A.06-2589, 2008 WL 1374213, at *6 (D.N.J. Apr. 9, 2008) ("'The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay.'") (quoting Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. Adams, 739 F.2d at 868; Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008); Tarkett, Inc. v. Congoleum Corp., 144 F.R.D. 289, 291 (E.D. Pa. 1992). "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." In re Pressure Sensitive Labeldstock Antitrust Litig., No. MDL.03-1556, 2006 WL 433891, at *1 (M.D. Pa. Feb. 21, 2006). As such, the question of undue delay requires the court to focus on the movant's reasons for not amending sooner, while "bearing in mind the liberal pleading philosophy of the federal rules." Cureton, 252 F.3d at 273; see also Lindquist v. Buckingham Twp., 106 F.

App'x 768, 775 (3d Cir. 2004) (noting that the question of undue delay, as well as the question of bad faith, requires that the court focus on the plaintiff's motives for not amending their complaint to assert this claim earlier). "Tactical decisions and dilatory motives may lead to a finding of undue delay." Leary v. Nwosu, No. Civ.A.05-5769, 2007 WL 2892641, at *4 (E.D. Pa. Oct. 2, 2007); see also Cureton, 252 F.3d at 271–74 (finding undue delay where plaintiffs made a tactical decision not to seek leave to amend until after they lost first argument on summary judgment). Notably, "[t]here is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006). Rather, "[w]hether delay is undue depends on the facts and circumstances of the case." Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc., No. Civ.A.05-0033, 2006 WL 1289545, at *4 (M.D. Pa. May 9, 2006). Ultimately, "the obligation of the district court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reasons for delay." Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988).

In the instant matter, LMS asserts that, although the Contract was not produced to Quest as a part of "formal" discovery until May 30, 2013, Quest has conceded that the Fee Agreement Contract was executed by one of its representatives on November 12, 2004, meaning that Quest must have had another copy of the Contract on or about that date. Moreover, LMS avers that it provided a copy of the Contract to Quest on December 1, 2011, after the initiation of the lawsuit. (LMS's Opp'n Mot. Amend 2.) Given these facts, LMS asserts that Quest unduly delayed by not seeking to amend its New Matter Crossclaim to plead the terms of this Contract until July 17, 2013. Quest's Supplemental Memorandum neither denies Quest's prior possession of the

Contract nor offers an explanation for its delay in filing its Motion.

The Court finds LMS's position to have merit. By executing the Contract in 2004, Quest was well-aware of is existence prior to this lawsuit. Moreover, even if it did not have a copy of it when the Complaint was initially filed, LMS provided Quest with a new copy over a year and a half ago. Thereafter, Quest received a third copy through formal discovery on May 30, 2013. Yet, Quest waited until July 17, 2013 to seek amendment of its New Matter Crossclaim, negating any suggestion that it acted with due diligence. Moreover, given the absence of any explanation for its failure to seek amendment sooner, the Court can only assume that the delay was tactical in nature.

This unexplained delay is even more troublesome in light of this lawsuit's history and the potential prejudice that LMS will suffer as a result. The lawsuit was initiated on July 29, 2011, and an Amended Complaint was filed on December 23, 2011. Since the entry of the initial Scheduling Order in February 2012, the parties have stipulated to five separate extensions of discovery deadlines, the latest of which (dated July 26, 2013) stays the matter for sixty days pending arbitration and makes fact discovery due by October 4, 2013. Should Quest be permitted to introduce this Contract as part of its New Matter Crossclaim, LMS will either have to complete discovery regarding this Contract within the limited remaining period of fact discovery or seek yet another extension of this already protracted litigation. Neither result is warranted, particularly in light of Quest's complete failure to justify its actions.

Finally, even assuming *arguendo* that the Court were to excuse the foregoing problems, the proposed amendment still fails on grounds of futility. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Holst v. Oxman, 290 F.

App'x 508, 510 (3d Cir. 2008). The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. Id. The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss. Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). Given the liberal standard for the amendment of pleadings, however, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." Aruanno v. New Jersey, No. Civ.A.06-296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." 6 Wright, Miller & Kane, Federal Practice & Procedure § 1487 (2d ed. 1990) (emphasis added).

According to the proposed amendment, Quest intends to allege that, under the Fee Agreement Contract, "[a]ll acts performed by the LMS employee that allegedly injured plaintiff were committed by an employee of LMS who was covered by LMS' policy of insurance pursuant to the terms of the Fee Agreement Contract." (Quest's Supplemental Mem. Supp. Mot. Amend, Ex. A ¶ 6.) In turn, Quest avers that "should any of plaintiff's claimed damages be proven at trial, then [LMS] should be solely liable to plaintiff, jointly and severally liable to plaintiff, or liable over to answering defendant by way of contribution and/or indemnity." (Id. ¶ 7.)

Notably, however, the Fee Agreement Contract contains a forum selection provision that states as follows:

> The Agreement will be governed by and interpreted in accordance with the laws of the State of New Jersey. The parties agree that state and federal courts within the State of New Jersey shall have exclusive jurisdiction over any disputes arising under the Agreement or the parties' relationship.

(Quest's Mot. Leave to Amend, Ex. C.) When forming a contract, parties have the option to select, in advance of litigation, the forum and law under which any disputes arising will be settled. Botman Int'l, B.V. v. Int'l Produce Imps., Inc., 205 F. App'x 937, 941 (3d Cir. 2006). A forum

7

selection clause is presumptively valid and enforceable, unless the party resisting enforcement can "make a strong showing, . . . either that the forum thus selected is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, . . . or that the clause was procured through fraud or overreaching." Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991) (internal citations and quotations omitted). The presence of " '[a] forum selection clause does not oust a court of subject matter jurisdiction.'" Id. (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)). "However, a court should decline to adjudicate a matter governed by a mandatory forum selection clause that vests authority in a different jurisdiction." Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG, 440 F. Supp. 2d 357, 362 (D.N.J. July 25, 2006).

The forum selection clause at issue is clearly a "mandatory" clause, as it provides that "state and federal courts within the State of New Jersey *shall* have *exclusive* jurisdiction over any disputes arising under the Agreement or the parties' relationship." (Quest's Mot. Leave to Amend, Ex. C.) Moreover, Quest has not offered any argument—let alone made a "strong showing"—that the clause is unenforceable due to grave difficulty or fraud. Indeed, Quest's only rebuttal to the enforcement of the forum selection clause is that "it is unclear if there is a dispute arising under the agreement as Defendant Quest Diagnostics Inc. only seeks to plead the existence and terms of the Fee Agreement contract in the Amended New Matter Crossclaim." (Quest's Supplemental Mem. Supp. Mot. Amend 1–2.)

Such an argument is unavailing. In determining the scope of a forum selection clause, it is essential to look to the language of the specific clause at issue. See John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997). The Third Circuit has held that forum

8

selection clauses covering "disputes" have a broader scope than those covering "claims" related to a contract. Id. By its very action of seeking recovery from LMS under the terms of the Fee Agreement Contract, Quest's New Matter Crossclaim effectively concedes that there is a dispute between LMS and Quest. In turn, the Contract explicitly dictates that such disputes must be resolved in New Jersey state and federal courts. As courts within the Third Circuit regularly enforce such negotiated provisions, any amendment of Quest's New Matter Crossclaim to plead the terms of this Contract remains futile.[1]

## IV. CONCLUSION

While parties should freely be given leave to amend when justice so requires, that freedom is not limitless. Aside from the fact that Defendant Quest's original Motion for Leave to Amend was improperly prepared and filed in an untimely fashion, the proposed amendment is futile pursuant to the forum selection clause set forth in the Fee Agreement Contract. As well-settled jurisprudence provides that such reasons are grounds for declining to grant leave to amend, Lake, 232 F.3d at 373, Quest's Motion must be denied. An appropriate Order follows.

---

[1] LMS also argues that the Contract states that temporary employees placed by LMS "are covered under LMS's liability policy." It does not provide that Quest would be entitled to coverage for any liability imposed upon it for acts of LMS employees working for Quest. As such, according to LMS, "any crossclaim based on that language would not be asserting a claim against LMS on behalf of Quest upon which relief could be granted." (LMS's Opp'n Mot. Amend 3.)

This argument does not establish that the amendment is "clearly" futile. The Contract states that "All LMS/ORG employees are covered under our liability and workers' compensation policies." (Quest's Supplemental Mem. Supp. Leave Amend., Ex. C.) It is feasible to interpret this contract to mean that should a client—in this case Quest—face liability due to the actions of an LMS/ORG employee, the client would be entitled to recover, under a theory of contribution or indemnity, from LMS's insurance policies. Having already found that the proposed amendment would be futile pursuant to the forum selection clause, however, the Court need not conclusively resolve this issue.